# LEASE

THIS LEASE, made as of the 30th of November, 2020 by and between T. Nelson Adams, (the "Lessor"), and Toby Bayless, trading as Primecare Management Services, jointly and severally, (the "Lessee"), provides:

1. Lease. Lessor leases to Lessee and Lessee hereby leases from Lessor, upon the terms and conditions herein contained first floor and 20 parking spaces in the parking lot of that certain real property located in Powhatan County, Virginia at 2615 Anderson Highway, Powhatan, Virginia, 23239 ("Leased Premises")

2. TERMS AND RENEWAL. The term of this Lease shall be for 4 months commencing at 12:00am on December 1 the ("Lease Commencement Date) and ending four months thereafter. At the end of such term this Lease, a new lease will be renegotiated for rental remuneration and terms. In order for the Lessee to renew this lease as aforesaid the Lessee must give the Lessor written notice of its intent to renew at least sixty(60) days prior to the end of the term of this lease.

3. RENTAL. Rental shall be $4150.00 per month with payment due and payable to the Lessor on the first (1st) day of each month. The Lessee agrees to pay a late fee of five Per Centum (5%) of the monthly rental fee for each payment not paid within ten (10) days of its due date.

4. TAXES, UTILITIES AND INSURANCE COVERAGE. (a) Lessee shall pay timely during the term of this Lease and any renewal term thereof, in addition to the rent, all taxes (except real estate taxes), license and permit fees, and all public utilities upon the Leased Premises. Upon Lessor's request, Lessee agrees to provide Lessor with written evidence of payment of all such items within ten (10) days of said written request. The Landlord shall pay all real estate taxes on the Leased Premises.

(b) Lessee covenants to pay timely to the appropriate public or private entity, as additional rent, charges for fuel, heat, water, sewer, gas,

<span style="color:red">EXHIBIT A</span>

electric lights, power and any other utilities used on the Leased Premises during the term of this Lease, or any renewal thereof.

    (c) Lessee shall procure and maintain, during the term of this Lease, and any renewal thereof, fire and extended coverage insurance with a responsible insurer on the Property for an amount not less than 80% of the replacement cost of the improvements on the Leased Premises with Lessor named as an additional insured. Lessee shall provide Lessor a copy of the insurance policy upon executing the Lease and a copy of each year's renewal policy within thirty (30) days of the renewal date.

    (d) Lessee agrees that it will, at its own cost and expense, maintain comprehensive and general public liability insurance for the protection of itself and lessor in an amount not less than $1,000,000 per person for death and personal injury, combined single limit, with a no deductible. Lessee shall provide Lessor a copy of the insurance policy upon executing the Lease and a copy of each year's renewal policy within thirty (30) days of the renewal date.

    5.    CASUALTY.    If a substantial part of the Leased Premises is so damaged by fire or other casualty so as to be declared by the appropriate County, State or Federal authorities to be uninhabitable, the Lessor may at his sole option terminate this lease. If this lease is so terminated the Lessee shall surrender the Leased Premises to the Lessor within ten (10) days of such Premises being declared uninhabitable or untenantable and rent shall be paid only to the date of such declaration.

    5.1    If the Lessor does not elect to terminate this Lease in case of total untenantability, this Lease shall continue in full force and effect and the Lessor shall restore the Leased Premises to at least its previous condition within a reasonable time. For that purpose, the Lessor and its agents and contractors may enter the Leased Premises. Rent shall abate during the period of untenantability.

    5.2    If the Leased Premises are so damaged by fire or casualty that the tenantability is only partially disturbed, the Lessor shall restore the same to at least its previous condition within a reasonable time. For that purpose, Lessor and its agents may enter the Leased Premises, and rent shall abate in proportion and duration equal to the partial untenantability of the Leased Premises. No claims shall be made by or allowed to be made by Lessee by reason of any inconvenience or annoyance arising from repair work.

5.3   In the event the Leased Premises suffer casualty damage, Lessee shall within ten (10) days remove any debris or rubbish, remove its personal property from the damage Leased Premises, and clean the damaged Leased Premises to facilitate repair or restoring of operations.

6.   FACILITIES.   Lessee shall not make any improvements of the Leased Premises without the prior written consent of the Lessor.  All costs associated with any improvements that have been approved by the lessor shall be the responsibility of the Lessee.

7. CONDEMNATION.  If the Leased Premises is partially condemned by the public authorities, Lessor shall be in no way responsible for the resulting inconvenience or damage to the Lessee, nor there any reduction in the rental, unless as a direct result of the condemnation, the Leased Premises shall be rendered unusable for its intended purpose. If the condemnation is total, or if as a direct result of the condemnation, the Leased Premises should be rendered unusable for its intended use, then this Lease shall terminate without Lessor in any way being responsible to Lessee for any reason or upon any account whatsoever.  All condemnation proceeds provided or awarded in the condemnation proceedings shall be property of the Lessor.

8. REPAIRS AND MAINTENANCE.     (a)  Lessee agrees to maintain and keep in good repair and in conformance with any applicable governmental building codes or other applicable laws, regulations or policies, at it own expense, during the term of this Lease, and any renewal thereof, the Leased Premises including, but not limited to, interior fuel storage tanks, interior heating and air conditioning equipment, interior portions of the water supply system, interior portions of the sewage disposal system, interior plumbing and electric fixtures, light bulbs, and glass,  Lessee shall be responsible for snow removal from the parking areas and driveways of the Leased Premises.

(b)   Lessor agrees to maintain and keep in good repair and in conformance with any applicable governmental building codes or other applicable laws, regulations or policies, at its own expense during the term of this Lease and any renewal thereof, the exterior of the Leased Premises including, but not limited to, roof, building structure, well, exterior septic system, exterior water, electrical, cable, etc. lines, heating and air conditioning systems and related equipment, all other fixtures and appurtenances on the Leased Premises, and for any electrical or plumbing repairs over $100.00 per occasion.

It is expressly understood that the Lessor shall not be responsible for snow removal from the leased Premises. At the end of the term of the Lease, Lessee shall remove all its trade fixtures and return the property to the Lessor in its original condition, normal wear and tear expected.

(c) Any improvements or changes to the Leased Premises shall be made at the expenses of Lessee but not without first obtaining the prior written consent of the Lessor. Lessee hereby indemnifies Lessor from any and all liabilities, charges and costs in connection with such repairs, alterations and replacements.

9. COMPLIANCE WITH ENVIRONMENTAL LAWS. Lessee agrees at Lessee's sole expense, during the term of this Lease, or any renewal hereof, to comply with all laws, orders and regulations having relation to the environment, of the federal, state or local governments, and with any direction of any public officer or officers, pursuant to such laws, orders and regulations, which shall impose any violation of duty upon Lessor or Lessee with respect to the use or occupation of the Leased Premises or the Facility. Lessee agrees to be responsible for any and all costs, including attorney's fees and court costs, and for fines, charges or penalties that might be imposed for violation of any such laws, orders or regulations. Without limiting the generality of the foregoing Lessee shall comply with all laws relating to the storage, use, sale and disposal of motor fuels and related products and other petroleum hydrocarbons, including, without limitation, laws and regulations related to the ownership, use and operation of underground storage tank systems. Lessee hereby agrees to indemnify and hold harmless Lessor from and against any fines, penalties, judgments and recoveries for or on account of damage to property (including the Leased Premises) or injury to or death of any person resulting from (a) any violation of any laws, orders or regulations relating to the environment, and (b) any leakage or spillage of motor fuel and related products or other petroleum hydrocarbons from the Facility, including without limitation, the cost of cleanup contamination of soils or ground water, whether on Leased Premises or not.

Further, (c) upon the termination or expiration of the Lease, for whatsoever reason, at the end of the term or any renewal thereof, or earlier as provided herein, and (d) upon the receipt from any duly constituted public official or authority or notification of the existence of, or potential for, contamination of soils or ground water, Lessee shall deliver, at Lessee's sole purpose, to Lessor and environmental site assessment survey for the Leased Premises, prepared by a qualified environmental engineer who is acceptable to Lessor and Lessee, which states that (I) the Leased Premises do not have any soil or ground water contamination which is in violation of any federal, state or local environmental

laws, regulations or orders, and (ii) if any underground tanks are not removed from the Leased Premises by Lessor, such tanks meet all federal, state and local laws, regulations and orders.

10. REMEDIES    (a) All items of indebtedness or damage which may become owing to Lessor by Lessee, or are otherwise payable by Lessee, under the covenants and provisions hereof shall be considered as items of rent and Lessor shall have the same liens and the same remedies for the collection thereof as are provided herein an by law for the collection of rent.

(b) Lessee hereby agrees that (I) if there is a default in the payment of rent (provided, however, Lessor shall be required to give written notice of monetary default to Lessee and Lessee shall not be deemed in default unless Lessee has not cured such default within ten (10) days after the receipt of notice thereof from Lessor), and (ii) if any default in Lessee's non monetary obligations hereunder shall continue for thirty (30) days after Lessee's receipt of written notice thereof from Lessor, or (iii) if at any time during the term of this Lease or any renewal thereof, Lessee vacates the Leased Premises, then the whole of the rental for said term or renewal then remaining unpaid shall, at the option of the Lessor, be and become payable forthwith, and Lessor shall have full power and authority to demand, recover and collect any balance of rental for said term or renewal then remaining unpaid by distrait or any process of law, as rent of said premises then due and payable. Additionally, Lessor is hereby authorized to enter upon the Leased Premises, either forcibly or otherwise, without Lessor being liable to any prosecution therefore.

11. ENFORCEMENT.   This Lease shall be construed pursuant to the laws of the Commonwealth of Virginia with the proper venue being the County of Powhatan, Virginia, and it shall insure the benefit of the parties hereto, their heirs, assigns and personal representative.  In the event of a default, the defaulting party agrees to pay all costs to include reasonable attorney's fees of the non defaulting party in enforcing this Lease.  The remedies described in this Lease are in addition to any and all other remedies available to the Lessor at law or in equity.

12. BANKRUPTCY.  It is further understood and agreed that in the event Lessee, its successors or assigns, (I) files or has filed against it any bankruptcy or insolvency petition, (ii) is placed in the hands of a receiver, (iii) makes a general assignment of its property for the benefit of creditors, any which shall

constitute a default. Additionally, the Lessor may enter upon the Leased Premises and take possession thereof and resort to any legal remedies prescribed by law or in equity to obtain possession of the Leased Premises.

13. INSPECTIONS. The Landlord reserves the right, but shall have no obligation, to inspect the Leased Premises and all improvements situated thereon at all times and show the property through agents or otherwise to bonafide purchasers or prospective Lesses.

14. FURTHER ASSURANCES. Lessee agrees to execute and deliver to Lessor any additional or supplemental instruments or documents as may be reasonably requested by Lessor in connection with the Lease.

15. QUIET ENJOYMENT. Lessor warrants that, if Lessee performs its obligations under this Lease, Lessee shall peaceable and quietly hold, possess and use the Leased Premises during the term of this Lease and any renewal thereof, free from any interference or hindrance, Lessee shall not interfere with or disturb, by unreasonable noise or otherwise, any of Lessor's other Lessees. Lessee shall not create on the Leased Premises 8:00p.m. until 6:00a.m. Monday through Friday and from 9:30p.m. until 8:00a.m. on Saturday and Sunday.

16. SUBLEASE and ASSIGNMENT. Neither this lease nor any part of the Leased Premises shall be subleased or assigned in whole or in part without the written consent of the Lessor first hand and obtained.

17. Guaranty. The Guarantor hereby personally unconditionally guarantees the payment and the performance by the Lessee of the rent and all other terms, conditions and covenants and of this lease with full recourse and agree to be bound by the terms of said Lease and any renewals, amendments, modifications or substitutions thereto. As to monetary obligations, this is a guarantee of payment and not merely of collection. The undersigned further, jointly and severally, agree to pay all reasonable attorneys; fees and costs incurred by the Landlord in enforcing this guarantee.

18. **TITLES.** The Titles and articles or paragraph headings are inserted for convenience only and are in no way to be construed as a part of this Lease or as limitation on the scope of the particular provision to which they refer.

19. **NOTICES.** Unless otherwise expressly qualified herin, all notices required under this Lease shall be in writing and shall be deemed to be properly served if sent by United States registered or certified mail, returned receipt requested, postage prepaid, or hand delivered to the respective party. Delivery of a notice to one of the Lessees as provided herein shall be deemed to be notice to all of the Lessees. For the purposes of this Lease the addresses of the parties are as follows:

    (a)    If to Lessor:
              T. Nelson Adams
              50 Loop Rd
              P.O. Box 926
              Ocracoke, NC 27960

    (b)    If to Lessee:

or such other address a Lessor or Lessee may designate from time to time by written notice to other parties hereto. The date of service of such notices shall be the date such notices are received by the addressee.

20. **VALIDITY.** In the event that any provision of the Lease shall be held invalid, the same shall not affect in any respect whatsoever the validity of the remainder of this Lease.

21. **NON WAIVER OF BREACH.** The Failure of any party hereto at any time to require performance by any other party of any provision hereof, shall in no way affect the right of any party to thereafter enforce same, nor shall the waiver by any party of any breach of any provision hereof, be taken or held to be a waiver of any succeeding breach of such provision, or as a waiver of the

provision itself. All of Lessee's monetary and nonmonetary obligations hereunder which incurred or accrued prior to the expiration or termination of the Lease, and all indemnifications of Lessee, shall survive the expiration or termination hereof.

22. APPLICABLE LAW. This Lease and the rights of the parties hereunder shall be interpreted in accordance with the laws of the Commonwealth of Virginia.

23. SUCCESSORS. All rights and Liabilities herein given to or imposed upon the respective parties hereto shall extend to and bind the several respective heirs, executors, administrators, successors and permitted assigns of the parties.

24. MEMORANDUM OF LEASE. Lessor and Lessee agree that upon the request of either party they shall execute, acknowledge and deliver a memorandum of the Lease in recoverable form. The cost of recording any such memorandum shall be borne by the party electing to record the same.

25. ENTIRE AGREEMENT. This instrument contains all the agreements and conditions made between the parties hereto. This Lease may not be modified orally or in any other manner than by an agreement in writing, signed by all parties hereto, their respective successors in interest.

IN WITNESS WHEREOF, Lessor and Lessee have caused this Lease to be executed in their respective names.

LESSOR:

_T. Nelson Adams_ (SEAL)
T. Nelson Adams    11-2-2020

**LESSEE:**

_____(SEAL)

BY _____Toby Bayless_____, its
_____CEO_____