**Fill in this information to identify the case:**

Debtor 1 _Toby Bayless_

Debtor 2 _———_
(Spouse, if filing)

United States Bankruptcy Court for the: _Northern District_ of District of _Illinois_

Case number _# 21 - 13372_

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

JAN 28 2022

**JEFFREY P. ALLSTEADT, CLERK**
TEAM - CA

## Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense.** Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

---

### Part 1: Identify the Claim

**1. Who is the current creditor?**

_Thomas Nelson Adams_
Name of the current creditor (the person or entity to be paid for this claim)

_———_
Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

_T. Nelson Adams_
Name

_50 Loop Rd._
Number   Street

_Ocracoke   NC   27960_
City   State   ZIP Code

Contact phone _804-833-6028_
Contact email _cadamstn24@gmail.com_

Where should payments to the creditor be sent? (if different)

Name

Number   Street

City   State   ZIP Code

Contact phone _____
Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_____

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

---

Official Form 410                    **Proof of Claim**                    page 1



**EXHIBIT B**

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|---------|

**6. Do you have any number you use to identify the debtor?**

☐ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 6 1 8 2

**7. How much is the claim?**

$ 12,627.51 . Does this amount include interest or other charges?

☒ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Unpaid rent in 2021

**9. Is all or part of the claim secured?**

☒ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                              $_____
Amount of the claim that is secured:          $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:     $_____

Annual Interest Rate (when case was filed)_____%
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☐ No
☒ Yes. Amount necessary to cure any default as of the date of the petition.     $ 12,627.51

**11. Is this claim subject to a right of setoff?**

☒ No
☐ Yes. Identify the property: _____

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☒ No

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:** **Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☒ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  1/26/2022
         MM / DD / YYYY

_T. Nelson Adams_
Signature

**Print the name of the person who is completing and signing this claim:**

Name  Thomas        Nelson        Adams
      First name     Middle name    Last name

Title  creditor

Company  _____
      Identify the corporate servicer as the company if the authorized agent is a servicer.

Address  50    Loop Rd.
      Number    Street
      Ocracoke        NC        27960
      City        State    ZIP Code

Contact phone  804-833-6028        Email  adamstn24@gmail.com

---

# LEASE

THIS LEASE, made as of the November 8, 2019 by and between T. Nelson Adams, (the "Lessor"), Primecare Consulting and Management LLC and Toby Bayless, guarantor, jointly and severally, (the "Lessee"), provides:

1.     Lease. Lessor leases to Lessee and Lessee hereby leases from Lessor, upon

2.     TERMS AND RENEWAL. The term of this Lease shall be for one the terms and conditions herein contained first floor (suite A & B) and 20 parking spaces in the parking lot of that certain real property located in Powhatan County, Virginia at 2615 Anderson Highway, Powhatan, Virginia, 23239 ("Leased Premises")
(1 )years commencing at 7:00am. on December 1, the ("Lease Commencement Date) and ending one(1) years thereafter. At the end of such term this Lease may be renewed one additional one year term upon the same terms and conditions excepting only the provision for the adjustment in the monthly rental as set forth in the next paragraph. In order for the Lessee to renew this lease as aforesaid the Lessee must give the Lessor written notice of its intent to renew at least ninety days (90) days prior to the end of the term of this lease.

3.     RENTAL. (a) Rental shall be $ 4150.00 per month with payment due and payable to the Lessor on the first (1st) day of each month. The Lessee agrees to pay a late fee of five Pecentum (5%) of the monthly rental fee for each payment not paid with ten (10) days of its due date.
      (b) In the event that this lease is renewed for any additional term, the monthly rental fee during each renewed term shall be increased from the rental fee charged for the preceding term by the lesser of the following amounts: the U.S. Consumer Price Index computed monthly, or by three percentum (3%) of the monthly rental fee for the preceding term.

4.     TAXES, UTILITIES AND INSURANCE COVERAGE. (a) Lessee shall pay timely during the term of this Lease and any renewal term thereof, in addition to the rent, all taxes (except real estate taxes), license and permit fees, and all public utilities upon the Leased Premises. Upon Lessor's request, Lessee agrees to provide Lessor with written evidence of payment of all such items within ten (10) days of said written request. Lessor shall pay all real estate taxes on the Leased Premises.

(b)  Lessee covenants to pay timely to the appropriate public or private entity, as additional rent, charges for fuel, heat, water, sewer, gas, electric lights, power and any other utilities used on the Leased Premises during the term of this Lease, or any renewal thereof.

(c)  Lessee shall procure and maintain, during the term of this Lease, and any renewal thereof, fire and extended coverage insurance with a responsible insurer on the Property for an amount not less than 80% of the replacement cost of the improvements on the Leased Premises with Lessor named as an additional insured. Lessee shall provide Lessor a copy of the insurance policy upon executing the Lease and a copy of each year's renewal policy withing thirty (30) days of the renewal date.

(d)  Lessee agrees that it will, at its own cost and expense, maintain comprehensive and general public liability insurance for the protection of itself and lessor in an amount not less than $1,000,000 per person for death and personal injury, combined single limit, with a no deductible.  Lessee shall provide Lessor a copy of the insurance policy upon executing the Lease and a copy of each year's renewal  policy within thirty (30) days of the renewal date.

5.    CASUALTY.    If a substantial part of the Leased Premises is so damaged by fire or other casualty so as to be declared by the appropriate County, State or Federal authorities to be uninhabitable, Lessor may at his sole option terminate this lease.  If this lease is so terminated the Lessee shall surrender the Leased Premises to the Lessor within ten (10) days of such Premises being declared uninhabitable or untenantable and rent shall be paid only to the date of such declaration.

5.1    If Lessor does not elect to terminate this Lease in case of total untenantability, this Lease shall continue in full force and effect and Lessor shall restore the Leased Premises to at least its previcus condition within a reasonable time.  For that purpose, Lessor and its agents and contractors may enter the Leased Premises.  Rent shall abate during the period of untenantability.

5.2    If the Leased Premises are so damaged by fire or casualty that the tenantability is only partially disturbed, Lessor shall restore the same to at least its previous condition within a reasonable time.  For that purpose, Lessor and its agents may enter the Leased Premises, and rent shall abate in proportion and duration equal to the partially untenantability of the Leased Premises.  No claims shall be made by or allowed to be made by Lessee by reason of any inconvenience or annoyance arising from repair work.

5.3    In the event the Leased Premises suffer casualty damage, Lessee shall within ten (10) days remove any debris or rubbish, remove its personal property from the damage

Leased Premises, and clean the damaged Leased Premises to facilitate repair or restoring of operations.

6.    FACILITIES.    Lessee shall not make any improvements of the Leased Premises without the prior written consent of the Lessor.  All costs associated with any improvements that have been approved by the lessor shall be the responsibility of the Lessee.

7. CONDEMNATION.  If the Leased Premises is partially condemned by the public authorities, Lessor shall be in no way responsible for the resulting inconvenience or damage to the Lessee, nor there any reduction in the rental, unless as a direct result of the condemnation, the Leased Premises shall be rendered unusable for its intended purpose. If the condemnation is total, or if as a direct result of the condemnation, the Leased Premises should be rendered unusable for its intended use, then this Lease shall terminate without Lessor in any way being responsible to Lessee for any reason or upon any account whatsoever.  All condemnation proceeds provided or awarded in the condemnation proceedings shall be property of the Lessor.

8. REPAIRS AND MAINTENANCE.        (a)  Lessee agrees to maintain and keep in good repair and in conformance with any applicable governmental building codes or other applicable laws, regulations or policies, at it own expense, during the term of this Lease, and any renewal thereof, the Leased Premises including, but not limited to, interior fuel storage tanks, interior heating and air conditioning equipment, interior portions of the water supply system, interior portions of the sewage disposal system, interior plumbing and electric fixtures, light bulbs, and glass,  Lessee shall be responsible for one half the cost of snow removal from the parking areas and driveways of the Leased Premises. Snow removal to done by Shannon Hartwell of Hartwell Maintance in connection with Virginia Family Dentistry next door as needed.

(b)    Lessor agrees to maintain and keep in good repair and in conformance with any applicable governmental building codes or other applicable laws, regulations or policies, at its own expense during the term of this Lease and any renewal thereof, the exterior of the Leased Premises including, but not limited to, roof, building structure, well, exterior septic system, exterior water, electrical, cable, etc. lines, heating and air conditioning systems and related equipment, all other fixtures and appurtenances on the Leased Premises, and for any electrical or plumbing repairs over $200.00 per occasion.  It is expressly understood that the Lessor shall not be responsible for snow removal from the leased Premises.  At the end of the term of the Lease, Lessee shall

remove all its trade fixtures and return the property to the Lessor in its original condition, normal wear and tear expected.

(c)     Any improvements or changes to the Leased Premises shall be made at the expenses of Lessee but not without first obtaining the prior written consent of Lessor. Lessee hereby indemnifies Lessor from any and all liabilities, charges and costs in connection with such repairs, alterations and replacements.

9.     COMPLIANCE WITH ENVIRONMENTAL LAWS.     Lessee agrees at Lessee's sole expense, during the term of this Lease, or any renewal hereof, to comply with all laws, orders and regulations having relation to the environment, of the federal, state or local governments, and with any direction of any public officer or officers, pursuant to such laws, orders and regulations, which shall impose any violation of duty upon Lessor or Lessee with respect to the use or occupation of the Leased Premises or the Facility. Lessee agrees to be responsible for any and all costs, including attorney's fees and court costs, and for fines, charges or penalties that might be imposed for violation of any such laws, orders or regulations.  Without limiting the generality of the foregoing Lessee shall comply with all laws relating to the storage, use, sale and disposal of motor fuels and related products and other petroleum hydrocarbons, including, without limitation, laws and regulations related to the ownership, use and operation of underground storage tank systems.  Lessee hereby agrees to indemnify and hold harmless Lessor from and against any fines, penalties, judgments and recoveries for or on account of damage to property (including the Leased Premises) or injury to or death of any person resulting from (a) any violation of any laws, orders or regulations relating to the environment, and (b) any leakage or spillage of motor fuel and related products or other petroleum hydrocarbons from the Facility, including without limitation, the cost of cleanup contamination of soils or ground water, whether on Leased Premises or not.

Further, (c) upon the termination or expiration of the Lease, for whatsoever reason, at the end of the term or any renewal thereof, or earlier as provided herein, and (d) upon the receipt from any duly constituted public official or authority or notification of the existence of, or potential for, contamination of soils or ground water, Lessee shall deliver, at Lessee's sole purpose, to Lessor and environmental site assessment survey for the Leased Premises, prepared by a qualified environmental engineer who is acceptable to Lessor and Lessee, which states that (I) the Leased Premises do not have any soil or ground water contamination which is in violation of any federal, state or local environmental laws, regulations or orders, and (ii) if any underground tanks are not removed from the Leased Premises by Lessor, such tanks meet all federal, state and local laws, regulations and orders.

10.     REMEDIES     (a)  All items of indebtedness or damage which may become owing to Lessor by Lessee, or are otherwise payable by Lessee, under the covenants and provisions hereof shall be considered as items of rent and Lessor shall have the same liens and the same remedies for the collection thereof as are provided herein an by law for the collection of rent.

(b)  Lessee hereby agrees that (I) if there is a default in the payment of rent (provided, however, Lessor shall be required to give written notice of monetary default to Lessee and Lessee shall not be deemed in default unless Lessee has not cured such default within ten (10) days after the receipt of notice thereof from Lessor), and (ii) if any default in Lessee's non monetary obligations hereunder shall continue for thirty (30) days after Lessee's receipt of written notice thereof from Lessor, or (iii) if at any time during the term of this Lease or any renewal thereof, Lessee vacates the Leased Premises, then the whole of the rental for said term or renewal then remaining unpaid shall, at the option of the Lessor, be and become payable forthwith, and Lessor shall have full power and authority to demand, recover and collect any balance of rental for said term or renewal then remaining unpaid by distrait or any process of law, as rent of said premises then due and payable.  Additionally, Lessor is hereby authorized to enter upon the Leased Premises, either forcibly or otherwised, without Lessor being liable to any prosecution therefor.

11.     ENFORCEMENT.   This Lease shall bae construed pursuant to the laws of the Commonwealth of Virginia with the proper venue being the County of Powhatan, Virginia, and it shall insure the benefit of the parties hereto, their heirs, assigns and personal representative.  In the event of a default, the defaulting party agrees to pay all costs to include reasonable attorney's fees of the nondefaulting party in enforcing this Lease.  The remedies described in this Lease are in addition to any and all lother remedies available to Lessor at law or in equity.

12.     BANKRUPTCY.   It is further understood and agreed that in the event Lessee, its successors or assigns, (I) files or has filed against it any bankruptcy or insolvency petition, (ii) is placed in the hancs of a receiver, (iii) makes a general assignment of its property for the benefit of creditors, any which shall constitute a default.  Additionally, Lessor may enter upon the Leased Premises and take possession thereof and resort to any legal remedies prescribed by law or in equity to obtained possession of the Leased Premises.

13.    INSPECTIONS.    Lessor reserves the right, but shall have no obligation, to inspect the Leased Premises and all improvements situated theron at all times and show the property through agents or otherwise to bonafide purchasers or prospective Lesses.

14.    FURTHER ASSURANCES.    Lessee agrees to execute and deliver to Lessor any additional or supplemental instruments or documents as may be reasonably requested by Lessor in connection with the Lease.

15.    QUIET ENJOYMENT.   Lessor warrants that, if Lessee performs its obligations under this Lease, Lessee shall peaceable and quietly hold, possess and use the Leased Premises during the term of this Lease and any renewal thereof, free from any interference or hindrance,  Lessee shall not interfere with or disturb, by unreasonable noise or otherwise, any of Lessor's other Lessees.  Lessee shall not create on the Leased Premises 8:00p.m. until 6:00a.m. Monday through Friday and from 9:30p.m. until 8:00a.m. on Saturday and Sunday.

16.    SUBLEASE and ASSIGNMENT.     Neither this lease nor any part of the Leased Premises shall be subleased or assigned in whole or in part without the written consent of the Lessor first hand and obtained.

17.    Guaranty.    The Guarantor, Toby Bayless, hereby personally unconditionally guarantees the payment and the performance by the Lessee of the rent and all other terms, conditions and covenants and of this lease with full recourse and agree to be bound by the terms of said Lease and any renewals, amendments, modifications or substitutions thereto. As to monetary obligations, this is a guarantee of payment and not merely of collection.  The undersigned further, jointly and severally, agree to pay all reasonable attorneys; fees and costs incurred by Landlord in enforcing this quaranty.

18.    TITLES.    The Titles and articles or paragraph headings are inserted for convenience only and are in no way to be construed as a part of this Lease or as limitation on the sope of the particular provision to which they refer.

19.    NOTICES.  Unless otherwise expressly qualified herin, all notices required under this Lease shall be in writing an shall be deemed to be properly served if sent by

United States registered or certified mail, returned receipt requested, postage prepaid, or hand delivered to the respective party.  Delivery of a notice to one of the Lessees as provided herein shall be deemed to be notice to all of the Lessees.  For the purposes of this Lease the addresses of the parties are as follows:

      (a)   If to Lessor:
            T. Nelson Adams
            50 Loop Rd
            P.O. Box 926
            Ocracoke, NC 27960

      (b)   If to Lessee:
            Pimecare Consulting and ManagementLLC
            3312 Bromley Lane
            Aurora, Illinois  60502

or such other address a Lessor or Lessee may designate from time to time by written notice to other party hereto.  The date of service of such notices shall be the date such notices are received by the addressee.

     20.    VALIDITY.     In the event that any provision of the Lease shall be held invalid, the same shall not affect in any respect whatsoever the validity of the reainder of this Lease.

     21.    NONWAIVER OF BREACH.  The Failure of any party hereto at any time to require performance by any other party of any provision hereof, shall in no way affect the right of any party to thereafter enforce same, nor shall the waiver by any party of any breach of any provision hereof, be taken or held to be a waiver of any succeeding breach of such provision, or as a waiver of the provision

sion itself. All of Lessee's monetary and nonmonetary obligations under which incurred or accrued prior to the expiration or termination of the se, and all indemnifications of Lessee, shall survive the expiration or nination hereof.

22.   APPLICABLE LAW.   This Lease and the rights of the parties ereunder shall be interpreted in accordance with the laws of the Commonwealth of Virginia.

23.   SUCCESSORS. All rights and Liabilities herein given to or imposed upon the respective parties hereto shall extend to and bind the several respective heirs, executors, administrators, successors and permitted assigns of the parties.

24.   MEMORANDUM OF LEASE.   Lessor and Lessee agree that upon the request of either party they shall execute, acknowledge and deliver a memorandum of the Lease in recoverable form. The cost of recording any such memorandum shall be borne by the party electing to record the same.

25.   ENTIRE AGREEMENT.   This instrument contains all the agreements and conditions made between the parties hereto. This Lease may not be modified orally or in any other manner than by an agreement in writing, signed by all parties hereto, their respective successors in interest.

IN WITNESS WHEREOF, Lessor and Lessee have caused this Lease to be executed in their respective names.

LESSOR:

_T. Nelson Adams_ (SEAL)
T. Nelson Adams        11-2-2020

LESSEE:

_____(SEAL)

BY _____,its

_____

To:    Bankruptcy Court Northern District of Illinois-Explanation of supporting documents
for debt owed to T. Nelson Adams by Toby Bayless who has filed a chapter 13 bankruptcy on
11/23/2021.

Toby Bayless of Arora, Illinois trading as CEO of PrimeCare Management bought the medical
practice named Powhatan Family Physicians  from Dr. David Duncan in late 2019. Toby signed
a lease for Suites A & B at my office building at 2615 Anderson Hwy., Powhatan, Va.( where
the practice had resided for at least 8 years) for one year at $4150.00/month as guarantor and
CEO of PrimeCare. The buy out soured after Toby said Dr. Duncan failed to turn over funds
from the practice resulting, finally, with Dr. Duncan's exit from the practice. Toby was never
able to find a provider for the practice and it went down hill to the point that he asked for
a reduction of space. I cut off Suite B, rented it and reduced his rent for Suite A to $3000.00
per month. He would not sign a new lease and the rent payments started coming in partial
payments resulting in late fees. He was behind almost 3 months he when decided to close the
practice promising to pay all the back rent. It was at that time that I sent an accounting of the
monies owed via email to which he agreed to the amount, asked if there would be interest
accuring and I said no. Just pay me the $12,627.51.  He said he would be sending $5000.00
from his IRS return which never happened. Then he filed bankruptcy on 11/23/2021.

T. Nelson Adams    11-26-22

**Nelson Adams** <adamstn24@gmail.com>
To: Toby Bayless <tobybayless@primecaremanagementservices.com>

Thu, Feb 25, 2021 at 8:03 AM

When I think about your situation, and mine as well, if you can show me a business plan for the future that would include a two year contract with a MD that is willing to work, not just part time, but work your clinic, then maybe a compromise could be worked out. That's not to say I would be willing to forgive debt, but perhaps we could push it back to give you some relief with your monthly costs. This could come in the way of using suite A only so I could rent suite B to someone else. This is all in the face of increased property tax, now a monthly water bill on top of having to send $20,000.00 on getting the water to the building. I know none of that because of you or is your problem, but it is part of the environment that I'm forced to work within.
I have tried to be on your side and help you as is evidenced by my lenient position on the arrival time of my rent payment. You have invested quite a bit of time, energy and money on this business and I fear you will lose it all if you fail to get an MD and don't take a stand in Powhatan. Consider that you are a thousand miles away, you have no one on the ground to be your agent, you don't know the area, none of your staff is from Powhatan and you have no capital. Dr. Duncan was and is a jerk, but he was your connection to the county and your success. I have put into motion a plan to look for a new renter, but, please, call me Monday to let me know about progress with an MD. Perhaps you should check with MCV. I will pray for a solution that could work for both of us.
[Quoted text hidden]

 Gmail

Nelson Adams <adamstn24@gmail.com>

## Rent
4 messages

**Toby Bayless** <tobybayless@primecaremanagementservices.com>
To: Nelson Adams <adamstn24@gmail.com>

Tue, Mar 30, 2021 at 6:32 PM

Hi Nelson,

Today, I mailed you a check for $6,000. You can cash it upon receipt. Thanks.

Toby Bayless

CEO
PrimeCare Management Services
www.primecaremanagementservices.com

**Nelson Adams** <adamstn24@gmail.com>
To: Toby Bayless <tobybayless@primecaremanagementservices.com>

Wed, Mar 31, 2021 at 7:22 AM

Great news and thanks for update. Hope things start to come together for U.
  PS For the future my accountant said the 1099 u sent should have been titled Misc rent  not consulting.  Thanks again
[Quoted text hidden]

**Toby Bayless** <tobybayless@primecaremanagementservices.com>
To: Nelson Adams <adamstn24@gmail.com>

Wed, Mar 31, 2021 at 9:00 AM

Good Morning, Nelson

I didn't see the 1099 you received as it came directly from my accountant. My apologies for the error. I will be sure to have him correct things on our end and if you want another copy I can have him send another copy - just let me know. Let's touch base next week just to catch.  Thanks and take care.

Toby Bayless

CEO
PrimeCare Management Services
www.primecaremanagementservices.com

[Quoted text hidden]

**Nelson Adams** <adamstn24@gmail.com>
To: Toby Bayless <tobybayless@primecaremanagementservices.com>

Wed, Mar 31, 2021 at 6:24 PM

No worries, just future information. That sounds good.
[Quoted text hidden]

 Gmail

Nelson Adams <adamstn24@gmail.com>

## Rent Owed
5 messages

**Nelson Adams** <adamstn24@gmail.com>                                                                 Thu, Aug 12, 2021 at 7:59 AM
To: Toby Bayless <tobybayless@primecaremanagementservices.com>

Since it is the 12th of Aug and no notice of rent owed being paid, I thought an accounting is needed.

| | |
|---|---|
| Rent paid and counted for June | $505.00 |
| Rent owed for June, July, August | $9,000.00 |
| 5% late fee added | $450.00 |
| Electric bill for Suit A transferred to my bill at change over | $82.51 |
| | |
| Total owed | $9,027.51 |

Hoping this issue is beginning to resolve itself. Please, send me the contact information for the new CEO.

Virus-free. www.avast.com

**Toby Bayless** <tobybayless@primecaremanagementservices.com>                          Thu, Aug 12, 2021 at 8:47 AM
To: Nelson Adams <adamstn24@gmail.com>

Thanks, Nelson. I'm expecting a check from one of our payers today and will be sending you payment this afternoon after the mail arrives and I can get to the bank. I'll text you after it's sent. Take care.

[Quoted text hidden]

**Nelson Adams** <adamstn24@gmail.com>                                                                 Thu, Aug 12, 2021 at 12:43 PM
To: Toby Bayless <tobybayless@primecaremanagementservices.com>

Sounds good, thank you.
[Quoted text hidden]

**Toby Bayless** <tobybayless@primecaremanagementservices.com>                          Thu, Aug 12, 2021 at 2:04 PM
To: Nelson Adams <adamstn24@gmail.com>

My pleasure.

[Quoted text hidden]

**Toby Bayless** <tobybayless@yahoo.com>                                                                 Thu, Aug 12, 2021 at 6:39 PM

 Gmail

Nelson Adams <adamstn24@gmail.com>

## Powhatan monies owed

2 messages

**Nelson Adams** <adamstn24@gmail.com>
To: Toby Bayless <tobybayless@primecaremanagementservices.com>

Thu, Oct 14, 2021 at 11:09 AM

As of August 12, 2021 monies owed    $9027,51                    September
rent                          3000.00                October perdem chg.
       1500.00                                          total      $13,527.51

          Less rent received since 9/12/21   $900.00

                                             Total owed

$12,627.51

          I'm hoping we can get this wraped up quickly so that we do not have to consider a
interest cost on this amount and will look forward to hearing that schedule. I am also having the
electric for Suite A moved to my name, hopefully by tomorrow.

**Toby Bayless** <tobybayless@primecaremanagementservices.com>
To: Nelson Adams <adamstn24@gmail.com>

Fri, Oct 15, 2021 at 6:14 PM

Thanks for the updated information.  I just completed my tax returns and should have $5,000 to
send you within the next 21 days.  Let's touch base at that point to discuss a payout of the
remaining monies owed.  I'll have a really good idea of what we have left to pay you after the
closing of the practice is completed because that expense will be gone and revenue from paid
claims will come in between now and then (our billers submitted another batch).  Thanks.

[Quoted text hidden]